**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| THOMAS E. LAGASSE, | : |
| PLAINTIFF, | : |
| | : CIVIL ACTION NO. 3:09cv391(VLB) |
| | : |
| v. | : July 12, 2011 |
| | : |
| CITY OF WATERBURY, | : |
| SERGEANT CAGNO, and | : |
| OFFICER M. MODEEN, | : |
| DEFENDANTs. | : |

## MEMORANDUM OF DECISION GRANTING DEFENDANTS' [DOC. #23] MOTION FOR SUMMARY JUDGMENT

Before the Court is a motion for summary judgment filed by the Defendants City of Waterbury, Sergeant Cagno ("Cagno"), and Officer M. Modeen ("Modeen"). The Plaintiff, Thomas E. Lagasse ("Lagasse") brought this suit pursuant to 42 U.S.C. § 1983 alleging violations of due process, equal protection, and his rights to be free from unreasonable search and seizure, under the Fifth, Fourteenth, and Fourth Amendments respectively.[1] In support of his Fourth Amendment claims, Plaintiff alleges that Defendants used excessive force in arresting him and that Defendants unlawfully made a warrantless entry into a private home. Plaintiff also claims he was denied medical treatment in contravention of his rights under the Fourteenth Amendment. Plaintiff alleges that the City of Waterbury is liable in connection with Plaintiff's 42 U.S.C. § 1983 claims on the basis of its failure to train and supervise its employees. In addition, Plaintiffs assert claims for false arrest, false imprisonment, intentional infliction of emotional distress, assault and battery. Defendants move for summary judgment on all counts of Plaintiffs'

---

[1] The assertions in Plaintiff's Complaint are not divided into individual counts.

Complaint arguing that Plaintiff has failed to set forth sufficient evidence for a reasonable jury to find that Defendants' actions violated the Fourth, Fifth or Fourteenth Amendments, constituted false arrest or imprisonment, intentional infliction of emotional distress, and assault and battery as Defendants' behavior was objectively reasonable and based on probable cause. In addition, Defendants argue that Plaintiff has no standing to assert a claim for warrantless entry and in the alternative that the warrantless entry was justified due to exigent circumstances. Lastly, Cagno and Modeen assert they are entitled to qualified immunity. For the reasons stated hereafter, Defendant's motion for summary judgment is granted in favor of all Defendants as to all of Plaintiff's claims.

Facts and Procedural Background

On March 10, 2009, Plaintiff's Complaint was removed from Connecticut Superior Court. Defendants filed their motion for summary judgment on August 31, 2010. [Doc.#23]. The Court notes that Defendants' motion is the first dispositive motion filed in the action. Pursuant to Local Rule 7(a), the Plaintiff's response to Defendants' motion for summary judgment was due September 21, 2010. On September 20, 2010, the Plaintiff moved for an extension of time to respond to Defendants' motion until November 1, 2010, which the Court granted. [Docs. #25 and 28, respectively]. On November 1, 2010, Plaintiff moved again for an extension of time to file its response to November 7, 2010, which the Court granted the next day. [Docs.# 30 and 31, respectively]. On November 9, 2010, Plaintiff moved for a third extension of time until November 19, 2010. On November 10, 2010, the Court granted Plaintiff's requested extension of time and

instructed that no further extensions will be granted. [Docs. #31 and 33, respectively]. On November 20, 2010, Plaintiff once again moved for an extension to file its response to November 26, 2011, which was objected to by Defendants. [Docs. #34 and 35, respectively]. On November 23, 2011, the Court denied Plaintiff's fourth motion for an extension of time indicating that "[a]s the Defendant's Motion was filed on 8/31/10, and the Court granted extensions of time for this response on 10/15/10, 11/2/10, and 11/9/10, and provided more time than requested in the most recent order granting the Plaintiff's request, therefore aggregating an additional two months to respond, and as the Plaintiff filed the most recent request on the day that the Response was due despite the Court's indication that 'no further extensions would be granted' and without indication that inquiry was made of opposing counsel, the Plaintiff's motion is denied." [Doc. #36]. To date, the Plaintiff has failed to file a response to Defendants' motion for summary judgment. As a result of Plaintiff's failure to file a response, the Court deems the assertions made in Defendants' 56(a)(1) statement as true. [Doc.# 23-2]. *LeSane v. Hall's Security Analyst, Inc.*, 239 F.3d 206, 210-211 (2d Cir. 2001) (holding where plaintiff had failed to respond to summary judgment motion, the Court should deem the assertions made in defendant's Rule 56 statement as admitted and then rule on the merits of the summary judgment motion.); U.S. v. Cirami, 535 F.2d 736, 739 (2d Cir. 1976).

Defendants' 56(a)(1) statement which the Court deems admitted, sets forth the following relevant facts. [Doc.# 23-2]. On June 24, 2007 at 4:12am Officer Modeen was dispatched to 24 Whittier Avenue, Waterbury, Connecticut, in

response to an attempted burglary. The complainant, Harry Raymond, told Modeen that he heard pounding on his front door and when he opened the door a "light skinned male began to push the door open and attempt to force entry." Mr. Raymond explained that he was able to forcibly push the "light-skinned male" back and close the door. He then saw the male run towards the house next door at 32 Whittier Avenue. Mr. Raymond also explained that 32 Whittier Avenue had been vacant for eight or nine months, but that night he observed a light on in the kitchen for the first time in months. While Modeen was at 24 Whittier Avenue, Sergeant Cagno arrived on the scene.

Modeen and Cagno then walked over to 32 Whittier Avenue where they observed a "For Sale" sign in the front yard and a realtor's lock box on the front door. They also observed that there was a light on in the home and the front door was partially open. Modeen and Cagno observed that the home was empty and unfurnished and pushed the door slightly further to look inside the home for the burglary suspect. They then observed through the opening a light skinned male slumped on the floor of the home. Modeen and Cagno upon the belief that the individual slumped over maybe seriously injured and in need of medical attention entered the home through the door while announcing that it was "Waterbury Police." After entering, they observed another body slumped on the floor and observed that the two bodies slumped on the floor, who were later identified as Plaintiff Lagasse and John Stankus, "appeared to be breathing, were snoring and smelled of alcohol." Once inside the dwelling, Defendant Modeen observed that

both Lagasse and Stankus "fit the light skinned description of the perpetrator described by Mr. Raymond."

Defendant Modeen then observed another male, later identified as Rick Lyons, sitting on a bathtub in the bathroom.  Modeen asked Lyons who lived at the residence to which Lyons responded "No one does."   Modeen and Cagno observed several other intoxicated individuals throughout the empty home and then began to handcuff them while they completed their investigation for safety reasons as they had not been able to ascertain if any of the individuals had weapons.  Modeen and Cagno instructed these individuals to stand back or to sit down.  However, these individuals repeatedly approached Defendants disregarding their instructions and were verbally combative.  Modeen first placed Lyons and Stankus in handcuffs.  Modeen then attempted to place Plaintiff Lagasse into handcuffs.  Modeen identified himself as police to Plaintiff Lagasse.  As Modeen began to cuff Lagasse's left wrist, Lagasse pulled his left arm forward and elbowed Modeen in the abdomen with his right elbow causing Modeen to sustain a bruise and seven cuts to his left hand from the handcuffs.  Modeen then requested that Lagasse "stop resisting" to which Lagasse responded by yelling profanities at Modeen.  Modeen then applied an arm bar to the left arm of the Plaintiff and took him to the ground.  Lagasse continued to resist being handcuffed and continued to use his right elbow to strike Modeen in the abdomen and yell obscenities.  Modeen used two open palm strikes to the head of Lagasse while he continued to physically resist and be verbally combative.  Afterward,

Lagasse complied and put his right arm out with his palm out and was handcuffed without further incident.

While handcuffing Lagasse, Modeen observed that Lagasse's breath smelled of alcohol and his speech was slurred. Modeen also observed empty alcohol containers in plain view at the residence of 32 Whittier Avenue. In addition, Lagasse admitted that he consumed several alcoholic beverages on the evening of June 23, 2007 into the morning of June 24, 2007.

Lagasse, who was a minor on the date of the incident, was transported to the Waterbury Police Department and arrested on a charge of interfering with a police officer in violation of Conn. Gen. Stat. § 53a-167 and issued an infraction ticket for possession of alcohol by a minor in violation of Conn. Gen. Stat. § 30-89(b). On August 30, 2007, Lagasse's charge of Interfering with a Police Officer was nolled as a result of completion of a family violence education program. On October 5, 2007, the infraction ticket was nolled. A nolle is not a dismissal, but merely a suspension of prosecution which can ripen into a dismissal. *Love v. Town of Granby*, No. CIV3:03CV1960, 2004 WL 1683159, at *4 (D. Conn. 2004).

On June 24, 2007, the residence of 32 Whittier Avenue was owned by Mildred Lyons, was up for sale, and currently vacant. Mildred Lyons is the mother of Rick Lyons. On June 24, 2007, Rick Lyons did not have permission to be in the house at 32 Whittier Avenue nor did any of the other occupants. This fact was corroborated by Michelle Williams, the sister of Rick Lyons, who arrived on the scene on June 24, 2007 and spoke with Modeen informing him that no one

including her brother is allowed in the house and that Rick Lyons was aware that he was not allowed in the house.

<u>Standard</u>

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no factual issues exist. *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.*, (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "If there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315-16 (2d Cir. 2006) (internal quotation marks and citation omitted).

<u>Analysis of False Arrest and False Imprisonment Claims</u>

In analyzing a Section 1983 claim of false arrest or imprisonment, federal courts look to the law of the state where the arrest occurred. *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004). Under Connecticut law, "'[f]alse imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another,'" *Russo v. City of Bridgeport*, 479 F.3d 196, 204 (2d Cir. 2007) (*quoting*

*Outlaw v. City of Meriden,* 43 Conn. App. 387, 392 (1996)).  The applicable law for false arrest and false imprisonment is identical and accordingly the Court will address these causes of action jointly.  *Id.*  Defendants argue that they had probable cause to arrest Plaintiff for Interfering with a Police Officer, in violation of Conn. Gen. Stat. § 53a-167 and to issue an infraction to Plaintiff for violating Conn. Gen. Stat. § 30-89(b) which prohibits minors from possessing any alcoholic liquor in a public or private location.

It is well established that probable cause is a complete defense to an action for false arrest.  *Russo*, 479 F.3d at 203.  Moreover, "a claim for false arrest turns only on whether probable case existed to arrest a defendant, and ... it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest."  *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006). "The court may determine the existence of probable cause as a matter of law 'if there is no dispute as to the pertinent events and the knowledge of the officers'" *Johnson v. Ford,* 496 F.Supp.2d 209, 213 (D.Conn. 2007) (*quoting Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).  "[F]ederal and Connecticut law are identical in holding that probable cause to arrest exists when police officers have 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'"  *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007) (*quoting Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). "[P]robable cause is a fluid concept ... not readily, or even usefully, reduced to a

neat set of legal rules ... While probable cause requires more than a mere suspicion of wrongdoing, its focus is on probabilities, not hard certainties." *Id.* (internal quotation marks and citation omitted). "In assessing probabilities, a judicial officer must look to the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* In sum, probable cause "requires only such facts as make wrongdoing or the discovery of evidence thereof probable." *Id.* at 157.

Here, Defendants have presented sufficient undisputed evidence to conclude that Defendants had probable cause to arrest Lagasse. Moreover, there is no evidence in the record that would disrupt such conclusion. Modeen had a reasonable basis to believe that the suspect in the burglary he was investigating had fled to 32 Whittier Avenue and that Lagasse was the perpetrator. Modeen and Cagno, in the process of their investigation, took the safety precaution to handcuff the individuals at 32 Whittier Avenue until they could determine there were no weapons on any persons. When Modeen, after announcing that he was police, attempted to handcuff Lagasse, Lagasse physically and verbally resisted being handcuffed and failed to heed Modeen's instruction to "stop resisting." Conn. Gen. Stat. § 53a-167 provides that a person "is guilty of interfering with an officer when such person obstructs, resists hinders or endangers any peace officer in the performance of such peace officer's duties." Here, Lagasse was interfering with Modeen's performance of his duties as a police officer and accordingly the undisputed facts demonstrate that Modeen had probable cause to arrest Lagasse for interfering with an officer. *Faulks v. City of Hartford*, 3:08-

cv-270, 2010 WL 259076, at *6 (D. Conn. 2010) (finding that officer had probable cause to arrest plaintiff for interfering with an officer as plaintiff resisted officer's attempt to place handcuffs on him); *Faubel v. City of Stamford*, No. CV085012985, 2010 WL 744930, at *8 (Conn. Super. Ct. Jan. 25, 2010) (finding that the police had probable cause to arrest plaintiff for interfering with arrest based on plaintiff's resistance and explaining that the fact that plaintiff was found not guilty of interfering with an officer was not dispositive on whether defendants had probable cause); *State v. Mounds*, 110 Conn. App. 10, 17 (2008) (finding that officer had probable cause to arrest plaintiff for interfering with an officer when Plaintiff refused to comply with officer's requests to stop his vehicle and show his hands).

In addition, Defendants presented evidence that they had probable cause to issue Lagasse an infraction ticket for possession of alcohol by a minor in violation of Conn. Gen. Stat. § 30-89(b). Modeen observed that Lagasse, who was a minor at the time, was passed out on the floor, that his breath smelled of alcohol, his speech was slurred and there were empty alcohol containers in plain view. In the context of drunk driving, courts have found substantially similar evidence probative that a motorist was operating a vehicle under the influence. *Murphy v. Comm'r of Motor Vehicles*, 60 Conn. App. 526, 529 (2000) (finding that evidence including motorist's slurred speech, glassy and blood shot eyes and the smell of alcohol on motorist's breath established that officer had probable cause to arrest motorist for drunk driving). Since the undisputed facts demonstrate that Defendants had probable cause to arrest Modeen for interfering with an officer

and to issue an infraction ticket for possession of alcohol by a minor, the Court grants Defendants' motion for summary judgment as to Plaintiff's false arrest and false imprisonment claims.

Defendants also argue that Plaintiff cannot maintain a cause of action for false arrest or false imprisonment under Connecticut law as Plaintiff has not established that his criminal proceedings were terminated in his favor. Assuming arguendo the case was resolved in his favor, the resolution alone is not dispositive as probable cause is a bar to these claims. *See Russo v. City of Bridgeport*, 479 F.3d at 203. Defendants argue that since a *nolle prosequi* is not an unqualified dismissal, Plaintiff cannot establish that the criminal proceedings were terminated in his favor. The Second Circuit in interpreting Connecticut law has not yet decided whether a *nolle prosequi* is a per se bar to a § 1983 claim of false arrest. *Russo*, 479 F.3d at 204. The Second Circuit noted that it has held that "a judgment of a conviction was a defense to either a claim of malicious prosecution or false arrest and that [the court was] not aware of any opinion by Connecticut's highest court addressing the issue of a favorable termination in the context of a claim for false arrest where there has been no determination as to guilt." *Roesch v. Otarola*, 980 F.2d 850, 853 (2d Cir. 1992). While courts within the District of Connecticut have reached different conclusions on whether a *nolle prosequi* bars a claim of false arrest or malicious prosecution, the Court agrees that the majority of Connecticut courts have held that a *nolle prosequi* satisfies the favorable termination element as long as the abandonment of the prosecution was not based on an arrangement with the defendant. However, a nolle will

preclude a subsequent case for malicious prosecution when it was made as part of a plea bargain. *See Roberts v. Babkiewicz*, 582 F.3d 418, 421 (D. Conn. 2009). In the present case, the criminal charges against Lagasse were nolled as a result of his successful completion of the discretionary family education program and therefore were based on an arrangement with defendant. Consequently, Plaintiff has not established that the proceedings were terminated in his favor and his claim for false arrest cannot be supported.

### Analysis of Fourth Amendment Excessive Force Claim and Qualified Immunity

In the Complaint, Plaintiff alleges that Defendant Modeen's conduct in arresting Plaintiff violated the Fourth Amendment's mandate against unreasonable searches and seizures. Claims that a law enforcement official used excessive force during a seizure, including an arrest or investigatory stop, are analyzed under the Fourth Amendment's "objective reasonableness" standard. Accordingly, a court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citation and internal quotation marks omitted). A court must examine: "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citation omitted). Further, reasonableness must be judged objectively under the circumstances, "from the perspective of a reasonable officer on the scene," and allow for the fact "that police officers are often forced

to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Id.* at 396-97. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers ... violates the Fourth Amendment." *Id.* (internal quotation marks and citation omitted). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (*citing Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)).

In addition, Defendants Modeen and Cagno are entitled to qualified immunity with respect to Plaintiff's excessive force claim unless "the official violated clearly established rights of which an objectively reasonable official would have known." *Blouin ex rel. Estate of Pouliot v. Spitzer*, 356 F.3d 348, 358 (2d Cir. 2004); see also *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In *Saucier v. Katz*, 533 U.S. 194, 201 (2001), the Supreme Court mandated that first, a court must decide whether the facts that a plaintiff has shown make out a violation of a constitutional right, and then second, the court must decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. Subsequently, in *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court ruled that courts are permitted to exercise their discretion in determining which of the two prongs should be addressed first.

Here, the right to be free from the use of excessive force under the Fourth Amendment has long been clearly established. *Green v. Montgomery*, 219 F.3d 52, 59 (2d Cir. 2000); *Carey v. Maloney*, 480 F. Supp. 2d 548, 556 (D. Conn. 2007).

However, Defendants would be entitled to qualified immunity if they made a reasonable mistake about the amount of force required. The objective reasonableness inquiry is fact-specific to any given case. *Graham*, 490 U.S. at 396. "The objective reasonableness test is met-and the defendant is entitled to immunity-if officers of reasonable competence could disagree on the legality of the defendant's actions." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995). In the context of an excessive force claim, "the question for the purposes of qualified immunity is whether a reasonable officer could have believed that the use of force alleged was objectively reasonable in light of the circumstances." *Id.* at 425.

Here, a reasonable officer could conclude that the level of force used was objectively reasonable in light of the circumstances. First, a reasonable officer could conclude that it was objectively reasonable for Defendants in the process of their investigation of a forced attempt to enter a dwelling and pursuit of the suspect in a neighboring dwelling to take the safety precaution of handcuffing the individuals at 32 Whittier Avenue until they could determine there were no weapons on any persons particularly given the fact that two of the occupants matched the description of the suspect, the officers were out-numbered and the occupants disregarded their instructions to stand or sit back and were verbally combative to them. Defendants were therefore concerned not only for their own safety but for the safety of everyone present in the vacant home. Courts have found the use of handcuffs to temporarily detain individuals on the scene during an investigation or the execution of a search warrant can be a reasonable protective measure. *Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F. Supp. 2d

459, 469 (S.D.N.Y. 2008) (finding that it was objectively reasonable for officer to handcuff two residents of a house they were searching for drugs and a drug dealer "for the sake of the officer's safety and that of everyone else present. As the Supreme Court has noted [t]he risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation.") (*quoting Michigan v. Summers*, 452 U.S. 692, 702-703 (1981)); *Riordian v. Joyner,* 3:02cv1132, 2005 WL 752210, at *6 (D. Conn. March 31, 2005) ("Handcuffing [the plaintiffs] was also a reasonable protective measure until defendants could rule out the possibility that [the plaintiffs] could access a weapon. Defendants used reasonable force to protect themselves under the circumstances"); *Kennedy v. McKiernan*, No. 3:04-cv-1367, 2009 WL 2514067, at *4 (D. Conn. Aug. 17, 2009) (finding that officer "reasonably chose to use handcuffs in order to continue the *Terry* stop and to ensure the safety of himself, [plaintiff], and the other people in the area.); *see also Barrows v. Coleman*, 352 F. Supp. 2d 276, 284 (D. Conn. 2005) (noting "that the Second Circuit has recognized a general authority for police officers to temporarily detain people during the execution of a search warrant and also to make limited security searches of the detained individuals as a self-protective measure.") (citations omitted).

In addition, "[n]either the Supreme Court nor the Second Circuit has established that a person has the right not to be handcuffed in the course of a particular arrest, even if he does not resist or attempt to flee." *Soares v. State of Connecticut*, 8 F.3d 917, 922 (2d Cir. 1993). However, "[h]andcuffing has been found to give rise to a claim of excessive force where an individual suffers an

injury as a result of being handcuffed." *Horton v. Town of Brookfield*, No. Civ. A 3:98CV01834, 2001 WL 263299, at *7 (D. Conn. Mar. 15, 2001) (citation omitted). Here, Plaintiff has not alleged that he was injured by the actual use of the handcuffs and therefore Defendants' decision to handcuff Lagasse cannot be a basis for an excessive force claim.

Instead, Plaintiff's excessive force allegations center on the use of force Defendant Modeen applied in his attempt to place handcuffs on Lagasse. The undisputed facts establish that Modeen only used physical force in response to Lagasse's physical and verbal resistance to being handcuffed. In particular, Modeen only applied force after Lagasse had pulled his left arm forward and elbowed Modeen in the abdomen causing Modeen to sustain a bruise and seven cuts to his left hand from the handcuffs. In response, Modeen applied an arm bar to Lagasse's left arm to take him to the ground. Modeen then instructed Lagasse to "stop resisting." However, when Lagasse continued to elbow and strike Modeen in the abdomen while yelling profanities, Modeen used two open palm strikes to Lagasse's head. Afterward when Lagasse stopped physically resisting, Modeen placed the handcuffs on Lagasse without the use of any additional force.

It is well recognized that a police officer can use physical force to effect an arrest. *See* Conn. Gen. Stat. § 53a-22 (permitting the use of physical force to effect an arrest or prevent the escape of a person who the officer reasonably believes to have committed an offense or to defend himself from the use or imminent use of physical force while effecting or attempting to effect an arrest). In order to succeed on an excessive force claim, a plaintiff must "show that [the

officer] used more force than was necessary to subdue him." *Curry v. City of Syracuse*, 316 F.3d 324, 332 (2d Cir. 2003).

A reasonable officer could conclude that the level of force used by Modeen was objectively reasonable in light of the circumstances. It is undisputed that Modeen used limited physical force, in the form of two palm strikes and the application of an arm bar, to defend himself and overcome Lagasse's resistance to effect his restraint and ultimate arrest. In addition, it is also undisputed that Modeen ceased to use physical force once Lagasse was subdued. Therefore Modeen's use of force to subdue Lagasse was both limited and in proportion to Plaintiff's physical resistance to being handcuffed and thus was objectively reasonable. *See Faulks*, 2010 WL 259076, at *11 (finding where plaintiff physically resisted defendants' efforts to handcuff him, a reasonable officer could conclude that defendants' use of force that included three strikes to plaintiff's shoulder and the use of baton to bring plaintiff to the ground was objectively reasonable); *Husbands ex rel. Forde v. City of New York*, 335 Fed. Appx. 124, 129 (2d Cir. 2009) (finding that "one punch causing no injury to a suspect who is resisting being put in handcuffs does not rise to the level of excessive force.") (*citing Graham*, 490 U.S. at 396-97); *see also Mickle v. Morin*, 297 F.3d 114, 118-119 (2d Cir. 2002) (finding that the evidence showed that, as a matter of law, no reasonable jury could determine that plaintiff was subjected to excessive force as defendants acted objectively reasonably in light of the circumstances that confronted them. Both defendants applied the minimum amount of force necessary to subdue plaintiff under the circumstances as plaintiff was intoxicated, abusive, belligerent,

and resisting defendants' instructions).  Moreover, even if Defendants applied more force than was actually required by the situation, they are protected by the doctrine of qualified immunity regardless as a government official is protected from liability in connection with reasonable mistakes of fact or law.  *Butz v. Economou*, 438 U.S. 478, 507 (1978).   Accordingly, the Court finds that the individual Defendants did not use excessive force and are entitled to qualified immunity and therefore Defendants' motion for summary judgment as to Plaintiff's excessive force claim is granted.

### Analysis of Assault and Battery Claim

In his Complaint, Plaintiff alleges that Defendant Modeen committed an assault and battery when he struck Plaintiff twice and forced him to the ground and that Defendant Cagno abetted Defendant Modeen in the assault and battery when he "stood by, watching, and making no attempt to stop the battery or to otherwise intervene." [Doc.#1-2].  Under Connecticut law, "[t]o establish a claim for assault and battery, plaintiff must prove that defendants applied force or violence to [him] and that the application of force or violence was unlawful." *Williams v. Lopes*, 64 F. Supp. 2d 37, 47 (D. Conn. 1999).   As explained above, Defendants had probable cause to arrest Plaintiff and Defendants' alleged use of force was not objectively unreasonable.  In addition, Conn. Gen. Stat. § 53a-22 explicitly authorizes the use of physical force to effect an arrest. *See Carey v. Maloney*, 480 F. Supp. 2d 548, 560 (D. Conn. 2007) (granting summary judgment on assault and battery claims as there was no evidence that police officer used unreasonable force and noting that in Connecticut, "a police officer may use such

force as the officer reasonable believes necessary").  Therefore, Plaintiff is unable to establish that Defendants' force was unlawful to support a cause of action for battery and assault.  Defendants' motion for summary judgment as to Plaintiff's claim for assault and battery with respect to Defendant Modeen and Plaintiff's unsustainable claim that Defendant Cagno abetted the assault and battery is therefore granted.

### Analysis of Warrantless Entry Claim

Plaintiff alleges that Defendants' conduct was a warrantless illegal entry into a private dwelling.  However, Defendants argue that Plaintiff has no standing to assert a claim for warrantless entry as Lagasse had no reasonable expectation of privacy in the vacant home.  "The Fourth Amendment's warrant requirement protects one's privacy interest in home or property.  Absent exigent circumstances or some other exception, the police must obtain a warrant before they enter the home to conduct a search or otherwise intrude on an individual's legitimate expectation of privacy." *U.S. v. Gori*, 230 F.3d 44, 50 (2d Cir. 2000) (*citing Maryland v. Dyson*, 527 U.S. 465, 544 (1999)); *Illinois v. Andreas*, 463 U.S. 765, 771 (1983) ("The Fourth Amendment protects legitimate expectations of privacy rather than simply places. If the inspection by police does not intrude upon a legitimate expectation of privacy, there is no 'search' subject to the Warrant Clause.").

As Fourth Amendment rights are personal, "[t]o contest the validity of a search, [plaintiff] must demonstrate the he *himself* exhibited an actual subjective

expectation of privacy in the area searched, and that this subjective expectation is one that society is willing to accept as reasonable." *U.S. v. Fields*, 113 F.3d 313, 320 (2d Cir. 1997) (*citing Smith v. Maryland*, 42 U.S. 735, 740 (1979)) (emphasis in the original). "A defendant lacks 'standing' in the Fourth Amendment context when his contacts with the searched premises are so attenuated that no expectation of privacy he has in those premises could ever be considered reasonable." *Id.* (citing *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978)). Further, "[a]lthough the extent of a defendant's property or possessory interest in the place searched is a factor generally considered in determining the reasonableness of a defendant's expectation of privacy, a defendant's lack of such an interest does not rule out the possibility that he may still show a reasonable expectation of privacy." Id. (citations omitted).

Defendants have presented evidence that Plaintiff had no reasonable expectation of privacy in 32 Whittier Avenue. Further, Plaintiff, despite having had ample opportunity to do so, failed to present any evidence to the contrary. It is undisputed that on June 24, 2007, Mildred Lyons owned 32 Whittier Avenue and that the home was up for sale, currently vacant and unfurnished. Mildred Lyons is the mother of Rick Lyons who was present that night at the house. Defendants encountered Rick Lyons sitting in a bathtub that night and Rick Lyons told Defendants that no one lived at the house. In addition, it is undisputed that Rick Lyons did not have permission to be in the house and it is also undisputed that Rick Lyons was aware of that fact. Plaintiff Lagasse therefore had no property or possessory interest in 32 Whittier Avenue.

Moreover, there is no evidence in the record that Lagasse had a reasonable expectation of privacy in the home. For example, Plaintiff does not allege that he was a houseguest with permission from the owner to be in the house. From the undisputed facts as alleged in Defendants' Rule 56 statement, it appears that Lagasse was rather a trespasser on the property who had no right or permission to be on the premises. *See Bristol v. Tilcon Minerals, Inc.*, 284 Conn. 55, 88 (2007) (Under Connecticut law the elements of trespass are: (1) ownership or possessory interest in land by the plaintiff; (2) invasion, intrusion or entry by the defendant affecting the plaintiff's exclusive possessory interest; (3) done intentionally; and (4) causing direct injury.) As a trespasser, Lagasse could have no reasonable expectation of privacy. *United States v. Sanchez*, 635 F.2d 47, 64 (2d Cir. 1980) (mere trespasser has no Fourth Amendment protection in premises occupied wrongfully); *United States v. Dodds*, 946 F.2d 726, 727-728 (10th Cir. 1991) (finding that fleeing suspect who entered vacant apartment and left door ajar had no standing to contest warrantless entry into apartment by police officer, inasmuch as suspect had no reasonable expectation of privacy in vacant apartment, despite his claim that he had previously used apartment as a sleeping place.).

The Court notes that the facts as alleged in the Complaint and inferences drawn from Defendants' Rule 56 Statement suggest the possibility that Lagasse was a friend of Rick Lyons and that his claims for warrantless entry might be based on his belief that he was a houseguest of Rick Lyons who had a possessory interest in the premises as a result of his mother's ownership.

Notably, the Supreme Court in *Minnesota v. Olson*, 495 U.S. 91, 96-97 (1990) held that overnight guests can have a reasonable expectation of privacy and that the Second Circuit in interpreting *Olson* concluded that "any guest in appropriate circumstances may have a legitimate expectation of privacy when he is there with the permission of his host, who was willing to share his house and his privacy with his guest." *U.S. v. Fields*, 113 F.3d at 321 (internal quotation marks and citation omitted). However, Lagasse does not allege and the record does not support an inference that he was a guest of the owner or occupier of the vacant house. Accordingly, the Court finds that Plaintiff has not established that he was a guest or otherwise had a reasonable expectation of privacy in the vacant house and therefore Defendants' motion for summary judgment as to Plaintiff's warrantless entry claims is granted.

In the alternative, Defendants also argue that their entry into 32 Whittier was lawful as it fell within the emergency exception to the warrant requirement. "Police officers may enter a dwelling without a warrant to render emergency aid and assistance to a person whom they reasonably believe to be in distress and in need of that assistance." *Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998) (internal quotation marks and citation omitted). "Courts must apply an objective standard to determine the reasonableness of the officer's belief … However, this probable cause requirement must be applied by reference to the circumstances then confronting the officer, including the need for a prompt assessment of sometimes ambiguous information concerning potentially serious consequences." *Id.* at 196-197 (internal quotation marks and citation omitted); *see*

*also United States v. MacDonald*, 916 F.2d 766, 769 (2d Cir. 1990) (en banc) ("The essential question in determining whether exigent circumstances justified a warrantless entry is whether law enforcement agents were confronted by an 'urgent need' to render aid or take action.").

Moreover, Defendants are entitled to "qualified immunity as a matter of law with respect to a situation where exigent circumstances, probable cause or reasonable suspicion were needed if the undisputed facts and all permissible inferences favorable to the plaintiff show that (a) it was objectively reasonable for the officer to believe that exigent circumstances, probable cause or reasonable suspicion existed, respectively or (b) officers of reasonable competence could disagree on whether exigent circumstances, probable cause or reasonable suspicion, respectively, were present." *Signorile By and Through Signorile v. City of New York*, 887 F. Supp. 403, 413 (E.D.N.Y. 1995).

A reasonable officer could conclude that it was objectively reasonable for Defendants to believe that individuals were in distress and in need of their assistance at 32 Whittier Avenue and therefore there were exigent circumstances that justified the warrantless entry. It is undisputed that Defendants observed through a partially opened door two bodies slumped over and unconscious on the floor in an unfurnished and vacant house and feared that the unconscious individuals needed medical attention. It is also undisputed that Defendants had reason to believe that a burglary suspect who had attempted to forcible entry and therefore might be dangerous was also present on the premises. Therefore, Defendants had probable cause to believe that a person was in danger and in

need of assistance. *See Bringham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (finding that police may enter a home without a warrant when they have an objectively reasonable basis for believing that an occupant is seriously injured or imminently threatened with such injury).

In addition, law enforcement officers may make a warrantless entry onto private property to engage in hot pursuit of a fleeing suspect. *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006). The Second Circuit has provided the following guideposts for determining whether exigent circumstances justified a warrantless entry:

> (1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) a clear showing of probable cause ... to believe that the suspect committed the crime; (4) strong reason to believe that the suspect is in the premises being entered; (5) a likelihood that the suspect will escape if not swiftly apprehended; and (6) the peaceful circumstances of the entry.

*U.S. v. Fields*, 113 F.2d at 322-23 (*quoting United States v. MacDonald*, 916 F.2d 766, 769-70 (2d Cir. 1990)). A reasonable officer could conclude that Defendants had probable cause to believe that Lagasse was the suspect who had attempted to forcibly enter 24 Whittier Avenue moments earlier and that the suspect was on the premises as the complainant had informed Defendants that the suspect had run towards 32 Whittier Avenue and Defendants observed through the open door to the home that Lagasse fit the description of the suspect. In addition, Defendants entered the home peacefully by announcing they were police before they walked through the open door and there was a likelihood that the suspect would escape if not swiftly apprehended. Accordingly, the Court finds that

Defendants' warrantless entry was permissible under the emergency and exigent circumstances exception to the warrant requirement and therefore summary judgment on Plaintiff's warrantless entry claim is also appropriate on this basis.

<u>Analysis of Due Process Claims</u>

It is unclear from Plaintiff's Complaint, whether Plaintiff is alleging a substantive due process or a procedural due process claim. Accordingly, the Court will examine both causes of action. If Plaintiff is alleging a substantive due process claim, Plaintiff is barred from doing so on the basis of the Supreme Court's decision in *Graham* in which the Supreme Court explicitly ruled that "all claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham,* 490 U.S. at 395. Accordingly, since Plaintiff's claims center on Defendants' conduct in arresting Plaintiff, such claims must be brought under the Fourth Amendment and Defendants' motion for summary judgment as to Plaintiff's substantive due process claim is therefore granted.

If Plaintiff is alleging a procedural due process claim, Plaintiff has not identified any facts whatsoever to support finding a procedural due process violation. For example, Plaintiff has not identified any state procedures that he alleges are constitutionally insufficient. *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 453, 460 (1989) (holding that as for the Due Process Clause,

standard analysis under that provision proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient.); *see also*, *Albright v. Oliver*, 510 U.S. 266, 275 (1994) ("One can conceive of many abuses of the trial process (for example, the use of a patently biased judge), that might cause a criminal sentence to be a deprivation of life, liberty or property *without due process.* But here there was no criminal sentence (the indictment was dismissed), and so the only deprivation of life, liberty or property, if any, consisted of petitioner's pretrial arrest. I think it unlikely that the procedures constitutionally "due," with regard to an arrest, consist of anything more than what the Fourth Amendment specifies; but petitioner has in any case not invoked 'procedural' due process.") (Scalia, J. concurring) (citations omitted) (emphasis in the original). Accordingly, Defendants' motion for summary judgment as to Plaintiff's procedural due process claim is granted.

<u>Analysis of Equal Protection Claim</u>

Plaintiff in his Complaint summarily alleges that he was deprived of equal protection of the law. Although it can be inferred from Defendants' Rule 56 statement that Plaintiff was African American, there are no allegations in Plaintiff's Complaint or any facts established that demonstrate that Plaintiff was the victim of race discrimination or that he was treated differently than other similarly situated individuals as required to sustain this cause of action. *Lawrence v. Texas*, 539 U.S. 558, 579 (2003) (holding that the "Equal Protection

Clause of the Fourteenth Amendment is essentially a direction that all persons similarly situation should be treated alike.") (internal citation and quotation marks omitted).   Since there is no evidence to support finding an equal protection violation, Defendants' motion for summary judgment as to Plaintiff's equal protection claims is granted.

<u>Analysis of Intentional Infliction of Emotional Distress</u>

Defendants move for summary judgment as to Plaintiffs' intentional infliction of emotional distress claim arguing that their conduct was not outrageous or extreme and that Defendant Modeen could not have known nor should have known that his action in arresting Plaintiff would cause him to suffer severe emotional distress.   Under Connecticut law, in order to succeed on an intentional infliction of emotional distress claim, Plaintiff must establish "(1) that the actor intended to inflict emotional distress or that he knew or should have known that the emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the distress suffered by the plaintiff was severe."   *Appleton v. Bd. Of Ed. Of the Town of Stonington*, 254 Conn. 205, 210 (2000) (citation omitted).   In addition, "[w]hether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. Only where reasonable minds disagree does it become an issue for the jury." Id.  (citation omitted).

Since Defendants had probable cause to arrest Plaintiff and their alleged use of force was not objectively unreasonable, the Court cannot conclude that the facts alleged support a claim for intentional infliction of emotional distress. *Astorino v. Scarpati*, No. CV095030563S, 2010 WL 367766, at *6 (Conn. Super. Ct. Jan. 5, 2010) (finding that since conduct by local and state police was sufficient to support a finding of probable cause, the court found that as a matter of law the facts alleged could not support a claim for intentional infliction of emotional distress as the conduct cannot be found to be extreme and outrageous). In addition, Plaintiff has not provided any other evidence establishing that Defendants' conduct was extreme or outrageous. *See Zalaski v. City of Hartford*, 704 F. Supp. 2d 159, 176 (D.Conn. 2010) (As a matter of law-absent other factors that may constitute "extreme and outrageous" conduct-an arrest will not be considered intentional infliction of emotional distress if the arresting officer has probable cause to make the arrest). Further Conn. Gen. Stat. § 53a-22 explicitly authorizes the use of physical force to effect an arrest and public policy dictates that a valid arrest should not be the basis for an intention infliction of emotional distress claim. *O'Brien v. Perry*, No. CV 980584503S, 1999 WL 124329, at *4 (Conn. Super. Ct. Feb. 19, 1999) ("Public policy militates that law enforcement officials not hesitate to effectuate an otherwise valid arrest not involving the use of unreasonable force for fear of recrimination if the arrestee is displeased. To hold otherwise would open a Pandora's Box of complaints, and shift the emphasis away from the act of the perpetrator that was the basis for the arrest.").

Accordingly, summary judgment on Plaintiff's claim of intentional infliction of emotional distress is granted.

### Analysis of Denial of Medical Treatment Claim

In his Complaint, Plaintiff alleges that his due process rights under the Fourteenth Amendment were violated when he was denied medical treatment for injuries he sustained to his left eye and nose as well as multiple cuts, scrapes and contusions to his head, neck and arms. "In order to prove liability on the part of police officers for the denial of immediate medical treatment, a plaintiff must demonstrate that the defendants denied treatment required to address a serious medical condition because of their deliberate indifference to that need." *Faulks*, 2010 WL 259076, at *14 (*citing Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996); *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244 (1983)). The denial of medical must concern an objectively serious injury and deliberate indifference is established if the defendant acted with reckless disregard for the substantial risk posed by the plaintiff's serious medical condition. *Id.* at 15. Thus, in order "to establish deliberate indifference, a plaintiff must show 'something more than mere negligence'; but proof of intent is not required, for the deliberate-indifference standard 'is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Weyant*, 101 F.3d at 856. "[A]n official 'does not act in a deliberately indifferent manner unless that official 'knows of and disregards an excessive risk to [plaintiff's] health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and

he must also draw the inference.'" *Faulks*, 2010 WL 259076, at *15 (*citing Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)).

There is no evidence in the record to demonstrate that Defendants were deliberately indifferent to an objectively serious injury. Plaintiff alleges that while at 32 Whittier Avenue his friends whom he claims were trained emergency medical technicians tried to tend to Plaintiff's wounds but "were unreasonable prevented from doing so by Defendant Modeen." [Doc. #1-2]. Plaintiff further alleges that while at the Waterbury Police Headquarters, he repeatedly asked for medical attention, but was unreasonably refused the same. [*Id.*] However, the Court is not persuaded that it was unreasonable for Modeen to have prevented Lagasse's friends from tending to him considering the fact that Lagasse's friends that evening had been drinking heavily and were verbally combative. If anything, it was a reasonable course of action to not allow inebriated combative individuals from attempting to provide medical care at the scene of the arrest. Defendants also present evidence which demonstrates that Plaintiff never requested medical treatment while Plaintiff was being arrested and transported to the Waterbury Police Station by Defendants Modeen and Cagno. Further, Defendants assert that Modeen in fact showed concern for Lagasse's medical condition and even asked Lagasse if he wanted medical attention while in transit from the scene to the police station which Lagasse refused. [Doc# 23, attach 4, Exhibit F, Modeen Deposition, p. 57]. The fact that Modeen was concerned for his medical condition negates a finding that he was deliberately indifferent. *Mowry v. Noone*, No. 02-cv-6257FE, 2004 WL 2202645, at *5 (W.D.N.Y. Sept. 30, 2004) (finding that the

undisputed facts establish that the defendants did not deny plaintiff medical treatment as the record indicated that plaintiff never told defendants that he needed medical attention and that defendant demonstrated concern for plaintiff's well-being when he asked him if he was allright).  In addition, the facts that Lagasse never requested medical treatment and even refused medical treatment when offered while under Defendants Modeen and Cagno's care and supervision undermines a finding that Lagasse suffered from an objectively serious injury. *See Universal Calvary Church v. City of New York*, No. 96CIV4606, 2000 WL 1538019, at *30-31 (S.D.N.Y. Oct. 17, 2000) (finding that Plaintiff offered no evidence that injuries visible or that any of the named defendants had reason to know of them and that he did not ask for treatment).

From the allegations in Plaintiff's Complaint, it appears that Lagasse did request and was denied medical treatment when he was incarcerated at the Waterbury Police Department.  However, Defendants argue that they turned Lagasse over to other officers at the police station and were not present at the holding cell or in the cell block area of the Waterbury Police Department where Lagasse claims to have sought medical care.  Therefore the Plaintiff is unable to demonstrate that Defendants Modeen and Cagno were personally deliberately indifferent to his request for medical treatment.  Accordingly, the Court grants summary judgment as to Plaintiff's denial of medical treatment claims.

<u>Analysis of Municipal Liability</u>

Plaintiff alleges that under the common law doctrine of *respondeat superior* that Defendant City of Waterbury is liable for the wrongful acts of Defendants Modeen and Cagno based on its failure to supervise and train. Since the Court has granted summary judgment on all of Plainitff's claims of wrongdoing by Defendants Modeen and Cagno, the Court likewise grants summary judgment as to Plaintiff's claims against the City of Waterbury as Plaintiff has not established that Defendants Modeen and Cagno violated any of his constitutional rights.

Moreover, even if Plaintiff could establish there were underlying constitutional violations, Plaintiff can only sue a municipality under 42 U.S.C. § 1983 for constitutional violations of its employees occurring pursuant to an official policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). There are no allegations in the Complaint nor any evidence in the record to demonstrate that the City of Waterbury had an unconstitutional policy or custom which caused Lagasse's injuries. In addition, a "failure to train will trigger municipal liability only where the failure to train amounts to deliberate indifference to the rights of members of the public with whom the employees will interact." *Green v. City of New York*, 465 F.3d 65, 80 (2d Cir. 2006) (internal quotation marks and citation omitted). In addition, at summary judgment, plaintiffs must also "identify a specific deficiency in the city's training program and establish that deficiency is closely related to the ultimate injury, such that it caused the constitutional deprivation." *Id.* at 81 (internal quotation marks and citation omitted). There is no evidence in the record that the City of Waterbury

was deliberately indifferent nor has Plaintiff identified a specific deficiency in a training program or demonstrated how that deficiency caused the constitutional deprivation complained of by Plaintiff. Accordingly, Defendant City of Waterbury is also entitled to summary judgment upon this ground.

### Analysis of Timely Service Defense

Defendants Modeen and Cagno argued they are entitled to summary judgment for the claims asserted against them in their individual capacity as Plaintiff has not properly effectuated service on them in their individual capacities and pursuant to Fed. R. Civ. P. 4 (m) they are entitled to a dismissal without prejudice. Defendants also argue that they preserved their objection to the sufficiency of process by asserting the defense in their answer. However since the Court has granted Defendants' motion for summary judgment as to all of Plaintiff's claims on other substantive grounds, it need not address Defendants' argument regarding timely service.

### Conclusion

Based upon the above reasoning, the Defendants' [Doc. #23] motion for summary judgment is GRANTED.

IT IS SO ORDERED.

_____/s/_____

Hon. Vanessa L. Bryant

**United States District Judge**

**Dated at Hartford, Connecticut: July 12, 2011**